**In re Estate of FUGATE.**

[Cite as *In re Estate of Fugate* (1993), 86 Ohio App.3d 293.]

Court of Appeals of Ohio,
Meigs County.

No. 489.

Decided Feb. 11, 1993.

*Drake W. Ebner,* for appellant J.B. O'Brien.

*J.B. O'Brien* and *Patrick H. O'Brien,* for appellee Eva Mae Stoecker.

---

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Meigs County Court of Common Pleas, Probate Division, granting the motion of Eva Mae Stoecker, defendant below and appellee herein, for a directed verdict.

Appellant assigns the following error:

"The court erred in sustaining the motion for judgment after the presentation of plaintiff's case, for the reason that said judgment was contrary to law and the facts in said case."

This case is before this court for the fourth time. The most recent appeal of this case involved a review of the trial court's ruling on a motion for judgment on the pleadings. On July 25, 1990, we reversed the trial court's judgment and held that an attorney *may* be entitled to equitable relief for services rendered to an estate. See *Estate of Fugate v. Stoecker* (July 25, 1990), Meigs App. No. 432, 1990 WL 105706, unreported█ In the decision we cited *In re Colosimo* (1957), 104 Ohio App. 342, 5 O.O.2d 24, 149 N.E.2d 31, which explains this equitable doctrine as "where one has created, augmented, or preserved a fund he may be compensated therefrom." *Id.* at 342–343, 5 O.O.2d at 25, 149 N.E.2d at 32. In *Fugate,* we wrote:

"Compensation under this equitable doctrine has been deemed proper where counsel, although not employed by the administrator or trustee, rendered services which benefitted the estate in its entirety, and not just a particular heir. See *In Re Estate of Oskamp* (1902), 1 N.P. 197."

On remand, the trial court conducted a bench trial to determine whether attorney J.B. O'Brien, plaintiff below and appellant herein, is entitled to attorney fees based on general equitable principles. A review of the record reveals the following facts pertinent to this appeal.

In October 1977, appellant entered into an attorney-client relationship with Eva Mae Stoecker to represent her individually against the estate of Frank M. Fugate. On January 15, 1978, appellant entered into a written contingency fee agreement with appellee. Appellant testified that by signing the agreement, he did not waive fees earned prior to entering into the agreement.

Appellant testified that he did everything appellee asked him to do to preserve her interest in the estate. Appellant noted various services performed by him, including the filing of exceptions to inventory and appraisal. Appellant testified that appellee terminated her attorney-client relationship with appellant on April 5, 1980. The court took judicial notice that Marion Fugate was removed as fiduciary of the estate on May 5, 1980.

The trial court's findings of fact set forth in the April 17, 1992 judgment entry provide in pertinent part:

"4. Plaintiff, during the course of his representation, being October 1977 through date of discharge of employment, whether determined as April 5, 1980, the assertion of plaintiff, or July 26, 1979 as asserted by defendant, was clearly representing the individual interest of Eva Stoecker and William Stoecker as beneficiary in the Estate of Frank M. Fugate.

"5.  The interests of Eva Stoecker and William Stoecker were adverse and antagonistic to the Estate of Frank M. Fugate.

"6.  Plaintiff did nothing under the terms and conditions of [the] contingency fee contract that allowed for his recovery of a fee from Eva Stoecker or William Stoecker.

"7.  Plaintiff had no employment contract with the Estate of Frank M. Fugate, while Marion Fugate was the fiduciary of the Estate.

"8.  Plaintiff ha[d] no employment contract with the Estate of Frank M. Fugate when Eva Mae Stoecker became the fiduciary of the estate in May 1980.

"9.  Plaintiff did not create, augment, or preserve a fund for the Estate of Frank M. Fugate."

The trial court's conclusions of law provide in pertinent part:

"Plaintiff's actions in representing Eva Mae Stoecker and William Stoecker relative to issues presented in the Estate of Frank M. Fugate present no legal or equitable basis upon which the Court may award reasonable attorney fees for such services against the estate.  The case of *In re Colosimo* (1957), 104 Ohio App. 342, [5 O.O.2d 24, 149 N.E.2d 31], cited by the Court of Appeals in decision dated July 25, 1990, No. 432, gives the Court plenary power in equity to make such a[n] award, under very limited prescribed conditions, none of which present themselves in the instant case."

The trial court granted appellee's motion for a directed verdict and denied appellant's recovery of attorney fees from the estate of Frank M. Fugate.

Appellant filed a timely notice of appeal.

I

Initially, we note appellee's motion for a directed verdict pursuant to Civ.R. 50 is inappropriate for a nonjury trial.  In *Jackson v. Gossard* (1989), 48 Ohio App.3d 309, 311–312, 549 N.E.2d 1234, 1236, the court discussed the applicability of Civ.R. 50 to nonjury cases:

"Although Civ.R. 50 provides for a motion for a directed verdict * * *, that rule is applicable only in jury cases and not in cases tried to the court without a jury.  The involuntary dismissal of non-jury actions comes instead within the scope of Civ.R. 41(B)(2), providing for a motion by the defendant for same upon completion of the presentation of the plaintiff's evidence, at which time the court, as trier of the facts, may weigh the plaintiff's evidence to determine whether the plaintiff has made out his case by a preponderance of the evidence.  *Jacobs v. Bd. of Cty. Commrs.* (1971), 27 Ohio App.2d 63, 56 O.O.2d 245, 272 N.E.2d 635."  See, also, *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 55, 2 OBR 57, 62, 440 N.E.2d 590, 596–597.

Therefore, we will review the proceedings below as if the trial court had ruled upon a motion for involuntary dismissal pursuant to Civ.R. 41(B)(2).[2]  See *Jackson*, 48 Ohio App.3d at 312, 549 N.E.2d at 1236.  Although a motion pursuant to Civ.R. 41(B)(2) is "somewhat akin to a motion for a directed verdict in a jury action," the standards used for ruling on a motion for involuntary dismissal under Civ.R. 41(B)(2) are slightly different from the standards used for ruling on a motion for a directed verdict pursuant to Civ.R. 50.  See Civ.R. 41, Staff Note. In *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267, the court summarized the Civ.R. 41(B)(2) standard as follows:

"In ruling upon a Civ.R. 41(B)(2) motion, it is the function of the trial court to review the evidence and the law.  Civ.R. 41(B)(2).  In this respect, the trial court is not required to construe the evidence in favor of the nonmoving party, but rather may weigh the evidence and render judgment.  *Central Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 47–48, 13 O.O.3d 347, 356–357, 409 N.E.2d 258, 270–271; *Hamilton Acceptance Corp. v. National Dealer Services, Inc.* (June 23, 1981), Franklin App. No. 81AP–79, unreported, at 3, [1981 WL 3276].  Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court *may* dismiss the case.  See Civ.R. 42(B)(2); *Hamilton Acceptance Corp., supra.*  While dismissal is discretionary with the trial court, that discretion is not absolute.  Rather, the decision to dismiss must be guided by the evidence in the case and the pertinent law.  Cf. *Jacobs v. Auglaize Cty. Bd. of Commrs.* (1971), 27 Ohio App.2d 63, 65, 56 O.O.2d 245, 246, 272 N.E.2d 635, 636–637; *Ahern v. Ehrie* (Aug. 30, 1984), Franklin App. No. 83AP–223, [1984 WL 5880], unreported, at 6." *Levine*, 48 Ohio App.3d at 27, 548 N.E.2d at 270.

We note, however, that when ruling on purely legal issues, an appellate court affords less deference to the trial court's determination and independently reviews the record to determine if dismissal was appropriate.

## II

In the case *sub judice*, appellant points out that his claim is not based on the contingent fee contract.  Rather, appellant asserts he is entitled to the payment

---

2.  Civ.R. 41(B)(2) provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.  The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.  .If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party."

of attorney fees from the estate because "all legal work which O'Brien performed for Eva Mae Stoecker benefitted not only Eva Mae Stoecker, but the estate as well." Appellant contends he: (1) endeavored to conserve the assets of the estate and protect Eva Mae Stoecker's interest; and (2) "prosecuted the executor for concealing, embezzlement and conveying away assets and by filing exceptions to the inventory and the appraisal in the estate."

Conversely, appellee argues that an attorney is entitled to fees paid by the estate only if his actions benefitted the estate. Appellee contends appellant did not create, augment or preserve estate assets. Appellee notes appellant admits that: (1) his attempt to include additional real property in the estate was unsuccessful; (2) he cannot state the dollar value of any asset included in the estate as a result of his efforts; and (3) his attempts to have the executor removed was unsuccessful. We note that in his brief, appellant concedes that because he "was not given an opportunity, due to his discharge, to acquire funds or property for the estate," he did not create, augment, or preserve a fund for the estate.

The payment of reasonable attorney fees lies within the sound discretion of the probate court. *In re Keller* (1989), 65 Ohio App.3d 650, 584 N.E.2d 1312; *Watters v. Love* (1965), 1 Ohio App.2d 571, 30 O.O.2d 595, 206 N.E.2d 39. In *Colosimo, supra,* the court noted that an attorney may be entitled to equitable relief for services rendered to an estate and may be compensated from the estate "where one has created, augmented, or preserved a fund." *Colosimo,* 104 Ohio App. at 342–343, 5 O.O.2d at 25, 149 N.E.2d at 32. This equitable doctrine has been labeled the "common fund theory of recovery" and is a narrow exception to the general rule that attorney fees are allowed only pursuant to statute or contract. *Keller,* 65 Ohio App.3d at 656, 584 N.E.2d at 1317. In *Keller,* as in the case at bar, an attorney claimed fees for representation of an heir in a motion to remove the administrator of the estate. The *Keller* court wrote:

"The question is whether an Ohio probate court may authorize the payment of attorney fees to one who was not employed by the executor or administrator of the estate. We find that, in rare cases, it may. See *Oskamp, supra.* * * * We hold that, in unusual circumstances such as those presented in the instant case, a probate court may allow payment of reasonable fees from the estate to an attorney employed by an heir or beneficiary where such attorney's services were necessarily and successfully rendered to the benefit of the whole estate. It is clear that Ohio probate courts have equitable powers. R.C. 2101.24(C); *In re Estate of Colosimo* (1957), 104 Ohio App. 342, 5 O.O.2d 24, 149 N.E.2d 31. As a general equitable rule, it has been held that an allowance may be made out of the decedent's estate for the services of attorneys for beneficiaries where those services are beneficial to the entire estate. See Annotation (1941), 142 A.L.R.

1459–1479, and supplements." *Keller,* 65 Ohio App.3d at 656, 584 N.E.2d at 1316. See, also, *Estate of Murray* (Mo.App.1984), 682 S.W.2d 857, 858–859; Annotation, Allowance out of Decedent's Estate for Services Rendered by Attorney not Employed by Executor or Administrator (1941), 142 A.L.R. 1459, which provides in pertinent part:

"[T]he test of benefit to the estate being whether or not all the beneficiaries or distributees of the estate, in their capacities as such, have become entitled to receive from the assets of the estate, when distributed, greater sums than those which they would have received had such attorney's services not been rendered * * *." See, also, *In re Estate of Brown* (1992), 83 Ohio App.3d 540, 615 N.E.2d 319.

In the case *sub judice,* the trial court found that appellant did not create, augment, or preserve a fund for the estate of Frank M. Fugate. After a review of the evidence adduced during the trial, we agree with the trial court's finding. We find no evidence that appellant's actions resulted in any benefit to the estate of Frank M. Fugate. Appellant's actions did not result in the estate's beneficiaries receiving greater sums from the estate than those which they would have received had appellant's services not been rendered. We reject appellant's assertion that an attorney may recover payment from a decedent's estate for unsuccessful efforts rendered on a beneficiary's behalf, which, had the efforts been successful, would have created, augmented, or preserved the estate.

Therefore, we find the trial court did not abuse its discretion in finding that appellant did not meet his burden of proof and in granting appellee's motion. Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error.

*Judgment affirmed.*

STEPHENSON, P.J., and GREY, J., concur.