DECISION AND JUDGMENT ENTRY
This case comes before the court on appeal from a judgment of the Ottawa County Municipal Court wherein appellant, Eva Marie Morris, was convicted on one count of driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1), and one count of failure to control, in violation of R.C. 4511.202.
On March 29, 2000, appellant filed a motion to suppress evidence obtained during her arrest, including all opinions and observations of police officers, statements appellant made, and appellant's refusal to submit to alcohol analysis. Appellant argued that there was no lawful cause to stop and detain her, and no probable cause to arrest her. Appellant also argued that she was not advised of her rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436.
The suppression hearing commenced on May 24, 2000. The only testimony taken at the hearing was that of Carroll Township Police Officer James Meek, the arresting officer. Meek testified that he was on duty at the Oak Harbor Police Department during the evening of January 10, 2000, when he responded to a call regarding a vehicle in a ditch or field on State Route 19 in Ottawa County. When he arrived at the scene, Meek observed that the vehicle had rolled over and was heavily damaged. He observed no individuals in or just outside the vehicle. Meek checked the vehicle's registration and discovered the vehicle belonged to appellant. Appellant was walking alongside the road, approximately half a mile away from the car, with Jeffrey Young, a volunteer emergency medical technician. Meek, Young, and appellant walked to Young's house, where emergency medical services personnel attempted to treat appellant, but she refused. Appellant appeared unsteady on her feet, her eyes were bloodshot, she had cuts on her, and she smelled of alcohol, according to Meek's testimony. Meek asked appellant if she had been drinking and she told him she had two beers.
Meek testified that before arresting appellant, he had a discussion with Young in Young's home while the medical team attempted to treat appellant. Testifying as to his state of mind when he arrested appellant, Meek said that Young told him appellant had come to Young's door, her hands bleeding, saying she had put her car in a ditch and requesting a ride home. Young told Meek that when Young's voice pager notified him of the accident, appellant left the house, stating "she had been at the wrong residence," and Young followed her outside and detained her until Meek arrived. Meek testified that after his conversation with Young, Meek asked appellant to perform field sobriety tests, and appellant refused. It was then that Meek arrested appellant.
However, during cross-examination, Officer Meek was asked to read his police report which stated that he had not spoken to Young until after he arrested appellant.
Meek testified that when he arrested appellant he read her the Miranda
warning and transported her to the Oak Harbor Police Department. After several unsuccessful attempts to reach an attorney by phone, appellant refused to take a breath test. Appellant asserted her right to remain silent when questioned by Officer Meek. However, Officer Meek testified that he asked appellant if she had worn her seatbelt and she said she had.
Following the suppression hearing, the trial court found that based on a totality of the circumstances, Officer Meek had sufficient information to warrant placing appellant under arrest for operating a vehicle under the influence of alcohol. The judge noted that there was a discrepancy between Meek's testimony and his police report, but stated, "[T]he testimony of officer [sic] Meek clearly indicates that he was told by Mr. Young that the Defendant had been operating the vehicle into a ditch." The judge also ruled on two statements appellant made: one as to how many beers she had consumed, which the judge found had not violated her Miranda rights, and one as to her seat belt use, which the judge found not to be incriminating, so Miranda did not apply.
The case went to trial July 11, 2000. Officer Meek testified to essentially the same information that he did during the suppression hearing, with one notable exception. Meek testified that he spoke to Mr. Young regarding appellant later in the evening, following her arrest, rather than prior to the arrest as he had indicated at the suppression hearing.
Mr. Young testified that appellant appeared intoxicated when she entered his house the night of the accident. Appellant told Young she had been in an accident down the road. Young said appellant's eyes were red, she slurred her speech, and her breath smelled of alcohol. Young asked appellant if she had been drinking, and she began to say a number Young did not hear, then said she had drunk two beers and a shot of tequila. Young testified that when the voice over his paging device began talking about the accident, appellant became nervous and apprehensive, and hurried out of the house. Young went after appellant and detained her until Meek arrived. Young's testimony was unclear as to precisely when he told Meek about his contact with appellant. Appellant's attorney questioned Young in the following manner:
 "Q. When did you have your first contact with the Carroll Township officer in this case, James Meek?
"A. As she [appellant] ran out of the house.
"Q. He showed up at that time?
"A. Yes.
 "Q. And do you recall making out a statement on this offense?
"A. Yes, I do.
"Q. When did you do that?
"A. January 11th.
"Q. That would have been the next day?
"A. Next day.
"Q. Where did you make that statement out?
"A. At my residence.
"Q. Did he come to your residence, James Meek?
"A. Yes, he did.
 "Q. So you never had an opportunity to sit down with Officer Meek and Ms. Morris in your residence?
"A. No."
Eric Parker, an Oak Harbor police officer who assisted Meek on the night of the accident, testified that he asked appellant if a pair of eyeglasses he had found near the accident site were hers. Appellant said they were not. However, when Parker stated he was going to throw the glasses away, appellant admitted the glasses were hers. Officer Parker said appellant appeared intoxicated with red, glassy eyes, and that the smell of alcohol filled the room she was in at the Oak Harbor police station. He said appellant made sarcastic comments about the accident and did not seem to take the matter seriously.
Although appellant did not testify at her suppression hearing or her trial, her attorney introduced information at both proceedings regarding appellant's medical condition, in the form of cross-examination questions. The line of questioning sought to explain appellant's actions and behavior following the accident. While cross-examining Meek and Young, appellant's attorney asserted that appellant had a "thoracic 11 comminuted compression fracture," "broken back," "broken ribs," and was "in shock" at the time she appeared to be intoxicated.
At the close of the state's case, appellant made a motion for judgment of acquittal, which the trial court overruled, stating that circumstantial evidence coupled with appellant's apparent admission was sufficient to satisfy Crim. R. 29. The jury returned guilty verdicts to both charges.
Appellant filed her notice of appeal with this court August 10, 2000, and asserts the following assignments of error:
 "I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HER ARREST AND EVIDENCE OF THE ARREST BECAUSE APPELLEE FAILED TO PRESENT EVIDENCE AT THE SUPPRESSION HEARING SHOWING THAT (1) APPELLANT WAS UNDER THE INFLUENCE WHEN THE VEHICLE WAS OPERATED AND/OR (2) THAT THE ARRESTING OFFICER OBSERVED THE INDICIA OF INTOXICATION OF APPELLANT TO WARRANT PROBABLE CAUSE FOR APPELLANT'S ARREST FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL.
 "II. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PRIOR TO THE CASE BEING SUBMITTED TO THE JURY BECAUSE APPELLEE FAILED TO PROVE THE ESSENTIAL ELEMENTS OF THE OFFENSE THAT APPELLANT WAS OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL."
R.C. 4511.19 states in pertinent part:
 "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse; * * *"
R.C. 4511.202 states:
 "No person shall operate a motor vehicle, trackless trolley, or streetcar on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, trolley, or streetcar."
In her first assignment of error, appellant advances that the trial court committed error by not granting her motion to suppress. In support of her assertion, appellant cites to State v. Finch (1985),24 Ohio App.3d 38, in which the Twelfth Appellate District held that "merely appearing to be too drunk to drive is not * * * enough to constitute probable cause for arrest." When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Mills (1992), 62 Ohio St.3d 357. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592. Accepting the facts as found by the trial court as true, the appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein (1991), 73 Ohio App.3d 486. "[A]s a general matter determinations of * * * probable cause should be reviewed de novo
on appeal." Ornelas v. United States (1996), 517 U.S. 690, 699.
An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe the defendant committed the offense. State v. Beck (1964),379 U.S. 89. "Articulating precisely what `reasonable suspicion' and `probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with `the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act'." Ornelas, supra, at 695, citing Illinois v. Gates
(1983), 462 U.S. 213, 231.
The Ohio Supreme Court has held that the arresting officer does not have to actually witness bad driving to arrest an individual for driving under the influence if the officer arrives shortly after an automobile accident and the defendant appears intoxicated and admits to operating the vehicle. Oregon v. Szakovits (1972), 32 Ohio St.2d 271. The court also held that "Generally, each `drunken driving' case is to be decided on its own particular and peculiar facts." Id. at 273. Subsequent cases have applied the totality-of-the-circumstances test to determine if there were reasonable grounds to believe that a person had been operating a motor vehicle under the influence of alcohol. See State v. McCaig
(1988), 51 Ohio App.3d 94; Atwell V. State (1973), 35 Ohio App.2d 221.
In this case, there is some dispute as to whether Officer Meek had the benefit of Mr. Young's knowledge before arresting appellant, specifically appellant's admission to driving her car into a ditch. Based on Meek's testimony at the suppression hearing, we conclude that the trial court did not err in denying appellant's motion to suppress. It is well settled that the trier of fact is not required to accept a witness's entire testimony. Rather, the trier of fact may accept or reject it in whole or in part. In this case, the trial court chose to give more weight to Officer Meek's testimony than to his written report of the incident.
However, we note that even without Young's information, Officer Meek was presented with the following circumstances: 1) A heavily damaged vehicle registered to appellant; 2) Appellant's overall appearance: cuts, bloodshot eyes, smelled of alcohol; 3) Appellant's behavior: walking by the side of the road near the accident site, unsteady on her feet, refused medical treatment, refused to take field sobriety tests; 4) Appellant's admission that she had drunk two beers; and 5) The absence of any evidence indicating there was another possible driver of the vehicle.
We find that this combination of circumstances was sufficient to provide Officer Meek with probable cause to arrest appellant. In so doing, we find this case factually distinguishable from Finch. There was no accident involved in Finch, and the arresting officer in that case did not observe defendant's impaired motor coordination as Meek observed appellant's. See Westlake v. Vilfroy (1983), 11 Ohio App.3d 26; State v.Walker (Feb. 26, 2001), Stark App. No. 2000CA00155, unreported.
In her first assignment of error, appellant also contends that she was "arrested" by Young when he detained her, and that Officer Meek should have read her, her rights pursuant to Miranda as soon as Meek encountered her. Appellant asserts that she was protected from self-incrimination from the moment she was detained by Young through application of her "Miranda rights." Yet, appellant claims in her brief that "Young does not fall within `the law enforcement system'." Therefore, appellant must be postulating that Young made a citizen's arrest.
R.C. 2935.04 states:
 "When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."
R.C. 2935.07 further states:
 "When an arrest is made by a private person, he shall, before making the arrest, inform the person to be arrested of the intention to arrest him and the cause of the arrest."
In this case, it was misdemeanors, not felonies, that were committed, and there is no evidence that Young informed appellant of any intent to arrest her. "[A] misdemeanor cannot be the basis for a citizen's arrest." Jackson v. Gossard (1989), 48 Ohio App.3d 309, 310. Thus, we find that Young's actions did not rise to the standard of attempting to effect a lawful arrest. Accordingly, appellant's first assignment of error is found not well-taken.
Appellant's second assignment of error challenges the sufficiency of the evidence produced at trial. In reviewing a record for sufficiency, "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Based upon the foregoing and upon a thorough review of the trial testimony, we cannot say that the trial court erred in failing to grant appellant's motion for judgment of acquittal. Accordingly, appellant's second assignment of error is found not well-taken. The judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and Richard W. Knepper,J., CONCUR.