[Cite as *In re Perkins*, 2014-Ohio-2414.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE SPECIAL | : | JUDGES: |
| NEEDS TRUST OF CARL ELWOOD | : | |
| PERKINS, JR. | : | |
| WILLIAM PAUL BRINGMAN, FIRST | : | |
| SUCCESSOR TRUSTEE, ATTORNEY | : | |
| FOR FIRST SUCCESSOR TRUSTEE | : | |
| AND CONSERVATOR | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| TROY A. REED | : | Case No. 14CA4 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Knox County Court
                            of Common Pleas, Probate Division,
                            Case No. 2004 3001

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           June 4, 2014

APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

WILLIAM PAUL BRINGMAN                TROY A. REED
13 East College Street               3860 Raccoon Valley Road
Fredericktown, OH 43019-1192         Alexandria, OH 43001

*Baldwin, J.*

{¶1}   Appellant William Paul Bringman, as first successor trustee, attorney for first successor trustee and conservator of the special needs trust of Carl Elwood Perkins, Jr., appeals from the January 29, 2014 Journal Entry of the Knox County Probate Court.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On or about January 3, 2002, the Carl E. Perkins, Jr. irrevocable special needs trust was established between Frances Kilgore, the mother of Carl E. Perkins, Jr., and Robert C. Paxton, II as trustee.   On January 16, 2004, an Application for Court to Accept Jurisdiction over Special Needs Trust was filed by counsel for Paxton. Pursuant to an Entry filed on February 23, 2004, the trial court accepted jurisdiction.

{¶3}   In December of 2005, the trial court accepted the resignation of Paxton as trustee.   As memorialized in an Entry filed on January 31, 2006, the trial court appointed appellant as successor trustee upon the written request of Carl E. Perkins. Appellant also was Perkins' attorney.

{¶4}   On November 19, 2012, appellant filed a notice of resignation as successor trustee. Pursuant to a Judgment Entry filed on November 21, 2012, Troy Reed was appointed second successor trustee.   On January 30, 2013, appellant filed an account showing that the trust assets consisted of a 2002 Dodge Caravan, Perkins' home and a checking account. A hearing on account was scheduled for March 13, 2013.

{¶5}   The second successor trustee, on February 15, 2013, filed a motion for authority to sell the real estate and other property at a public auction and asked that a

reserve price be set at $80,000.00 with respect to the real estate. The second successor trustee noted that Carl E. Perkins had been appointed a guardian and was residing in a nursing home. The trial court, pursuant to a Judgment Entry filed on the same day, granted such motion.

{¶6} Appellant, on April 1, 2013, filed an Application for Trustee Commissions, Attorney Fees and Expenses and Conservator Fees. The application covered the period from March 27, 2009 through February 20, 2013. Appellant, in his application, requested attorney fees in the amount of $8,078.58, reimbursement for out-of-pocket expenses in the amount of $15.86, and trustee commissions in the amount of $6,649.87 and conservator compensation in the amount of $1,150.00. A non-oral hearing on the application was scheduled for April 29, 2013.

{¶7} The successor trustee, on April 5, 2013, filed a Motion to Approve the Sale of Real Estate. The second successor trustee, in his application, stated that the $80,000.00 reserve was not met at an auction held on March 9, 2013 and that a buyer had come forth with an offer of $60,000.00. Based on the condition of the property, the second successor trustee asked that the sale for $60,000.00 be approved. The trial court, via a Judgment Entry filed on April 8, 2013, approved the request.

{¶8} The second successor trustee, on April 25, 2013, filed an objection to appellant's April 1, 2013 application, arguing that the fees appellant sought were excessive, the commissions were not based on realistic values of trust assets, and there were "not sufficient trust assets to warrant such payments that did not benefit the beneficiary." The second successor trustee specifically alleged that, during the period that appellant served as trustee and conservator, Perkins received unsatisfactory care

and suffered life threatening health concerns and he had to be removed from his home in August of 2012. He argued, in relevant part, as follows:

{¶9} "A guardianship application was filed in Licking County due to poor decision making and judgment that resulted in life threatening health concerns. Mr. Perkins' home health providers provided unsatisfactory care, they stole from him and took advantage of him along with some family members. There were rumors of providers making meth and selling drugs in the residence.

{¶10} "When Mr. Perkins was removed from his home, he was taken to a specialty hospital in Columbus with horrific bedsores and other ailments as a result of the neglectful care. He has resided in a nursing home or hospital since he was moved from the Frederictown home owned by the trust in August 2012.

{¶11} "Mr. Perkins is significantly impaired from the effects of a traumatic brain injury and physical impairments resulting from an automobile accident in 1999. Combined with the deplorable condition of the residence and insufficient care and support, a community volunteer was appointed guardian for Mr. Perkins in Licking County on October 23, 2012.

{¶12} "Throughout this entire time, Mr. Bringman [appellant] was the duly appointed successor and trustee and he was named conservator for Mr. Perkins on June 9, 2007. The conservator's powers were for an 'indefinite' time period and limited to 'medical care decisions'. When contacted during the Licking County proceedings, Mr. Bringman [appellant] reported his appointment was ineffective because it was voluntary and said he could not override or impose anything upon Mr. Perkins, and as a result, Mr. Perkins did not get appropriate care. Bottom line, Mr. Perkins was neglected,

received inadequate care and cash assets in the Trust were drained to zero during the period Mr. Bringman [appellant] served as trustee and conservator."

{¶13}   The second successor trustee further alleged that the condition of the trust real estate was extremely poor and filthy, that the hot water tank and copper pipe had been removed and that the roof needed repair.  The second successor trustee noted that the fees and commission that appellant sought would equal approximately 32% of total remaining trust assets, leaving next to nothing remaining, and that appellant had already been paid $21,787.21 in previous approved billings.  He indicated that the real estate had been sold for $60,000.00 and the van had been sold for $3,999.00, but that appellant sought commissions based on a real estate value of $146,560.00 and the van value at $35,789.52.  Finally, the second successor trustee argued that appellant "spent more time documenting and preparing for applications as opposing to make sure that Mr. Perkins was receiving adequate care and having his needs met in a safe and habitable residence."

{¶14}   Appellant filed a reply to the objection on May 1, 2013.  The hearing on the application was continued to June 26, 2013. On such date, according to the trial court's January 29, 2104 Journal Entry, the trial court heard from both appellant and the second successor trustee.

{¶15}   Pursuant to a Journal Entry filed on January 29, 2014, the trial court reduced appellant's requested fees for attorney services, for services as trustee and for services as conservator by 60% and ordered that appellant be paid $3,231.43 for attorney services, $2,659.95 for trustee services, $460.00 for conservator services and $15.86 for out of pocket expenses, for a total of $6,367.24.

{¶16}  Appellant now appeals from the trial court's January 29, 2014 Journal Entry, raising the following assignment of error on appeal:

{¶17}  THE TRIAL COURT ERRED IN ITS AWARD OF ATTORNEY FEES, TRUSTEE  COMMISSION AND CONSERVATOR FEE TO APPELLANT IN ITS ORDER OF JANUARY 29, 2014.

I

{¶18}  Appellant, in his sole assignment of error, argues that the trial court abused its discretion in its award of attorney fees, trustee commissions and conservator fees. We disagree.

{¶19}  As a general rule, a probate court has discretion whether to reduce or deny a trustee compensation and that its decision will only be reversed if the probate court abuses that discretion. *Natl. City Bank v. Beyer,* 89 Ohio St.3d 152, 159, 2000-Ohio-126, 729 N.E.2d 711.   In addition, the payment of reasonable attorney fees lies within the sound discretion of the probate court. *In re Estate of Fugate* , 86 Ohio App.3d 293, 298, 620 N.E.2d 966 (4th Dist. Meigs 1993). The phrase "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶20}  Although a probate court's discretion is broad, it is not unfettered. When a probate court is exercising its discretion, it must do so within the bounds provided by Sup.R. 74(E). That Rule provides:

{¶21}  "The court may deny or reduce compensation if there is a delinquency in the filing of an inventory or account, or after hearing, the court finds the trustee has not faithfully discharged the duties of the office."

{¶22}  With respect to attorney fees, Prof.Cond.R. 1.5(a)[1] prohibits excessive fees:

{¶23}  "(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

{¶24}  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

{¶25}  "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

{¶26}  "(3) the fee customarily charged in the locality for similar legal services;

{¶27}  "(4) the amount involved and the results obtained;

{¶28}  "(5) the time limitations imposed by the client or by the circumstances;

{¶29}  "(6) the nature and length of the professional relationship with the client;

{¶30}  "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

{¶31}  "(8) whether the fee is fixed or contingent."

{¶32}  We note that there is no transcript of the June 26, 2013 hearing at which, according to the trial court, the court heard testimony from Reed, the second successor trustee, and appellant. Because no written transcript was provided pursuant to App.R. 9, we must accept as true the trial court's specific factual findings.

---

[1] Formerly Ohio Code Prof. Resp. DR 2-106(B).

{¶33}   In the case sub judice, the trial court specifically found that appellant had not faithfully and fully fulfilled his duties to Carl. E. Perkins as trustee or conservator. The trial court noted that during the time appellant was trustee, the value of the trust assets, which constituted primarily of a parcel of real estate and the 2002 Dodge Caravan,  declined 60% as a result of appellant's failure to preserve such assets. The trial court found that the decline in value was due mainly thorough acts of waste and destruction.   According to the trial court, "Mr. Reed described the Perkins home, the trust's chief asset, as being in general disrepair and poor condition. He further described water damage to several areas, stained carpets, missing copper pipe and hot water heater, a roof in need of repair, damaged cabinets and appliances and a generally filthy house." The trial court also found that, as evidenced by appellant's own billing records, during the almost four years that appellant was conservator, he had only two face to face meetings with Carl E. Perkins and, therefore, was in no position to properly assess Perkins' well-being or the condition and safety of his surroundings. The trial court also found that the time appellant billed for his services as an attorney was excessive because appellant billed, for example, for hand delivering documents to the court. Based on such findings, we cannot say that the trial court abused its discretion in its award of attorney fees, trustee commission and conservator fees. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶34}   Appellant contends that he was a conservator and not a guardian, he only had limited authority. His powers were limited to making medical decisions. However, as noted by the trial court, "a conservator is still a fiduciary who is obligated to act in the best interests of his ward. If [appellant] believed his authority as conservator was

inadequate to address Mr. Perkins health and well-being needs, he could have and should have filed for the appointment as a guardian. At the very least, [appellant] could have notified the Court that his authority as a conservator was not adequate to meet Mr. Perkins needs,…" Appellant did not do so.

{¶35}   Appellant's sole assignment of error is, therefore, overruled.

{¶36}   Accordingly, the judgment of the Knox County Court of Common Pleas, Probate Division, is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Farmer, J. concur.